WITHERS & LOUD, plaintiffs in error, vs. THE MACON & WESTERN RAILROAD COMPANY, defendant in error.

A Railroad Company having no interest in a contract for *through* transportation, made between other parties, cannot prevent the consignee from stopping the goods before reaching their line of Road. And if they carry the goods over their line, in spite of the consignee's objections, they have no right to collect any freight or expenses. While goods are in progress over a *through line,* they cannot, without the carrier's consent, or the payment of freight for the whole distance, be stopped by the consignee short of the destination fixed by contract; but the benefits of the contract will be confined to such carriers as were interested in it when made.

In Bibb Superior Court.   Decision by Judge COLE.   November Term, 1866.

A lot of corn belonging to the plaintiffs was transported from Atlanta to Macon by the defendant, and not being applied for at the depot, was, after the lapse of several days, stored by the defendant in a warehouse in the city.   On ap-

plying for the corn, thereafter, the plaintiffs were required to pay the freight on the same from Atlanta to Macon, together with drayage, storage, etc., after its arrival. They made the payment, with the understanding that the defend-ant would refund the money if not legally entitled to collect and retain it.

A case was made, and when the same came on to be heard, it was, by consent of parties, submitted to the presiding Judge for his determination on both law and fact, subject to review by the Supreme Court.

The facts, so far as it is necessary for them to be known in order to understand the point decided by the Supreme Court, were as follows:

The corn was shipped from St. Louis on bills of lading, reading thus:

"ST. LOUIS, March 29th, 1866.

Shipped, in good order and condition, by Robinson & Garrard, for account and risk of whom it may concern, on board the good steamboat called the Silver Ware, whereof —————— is master, for the present voyage, now lying at the Port of Saint Louis, and bound for Tennessee River, the following packages or articles, marked or numbered as be-low, which are to be delivered without delay in the like good order at the Port of Macon, Ga., (unavoidable dangers of the River and Fire only excepted) unto Withers & Loud, or assigns, they paying freight for said goods at the rate of 47 cents per bushel to Atlanta, thence subject to local freight.

In witness whereof, the owner, master or clerk of said steamboat, hath affirmed to four bills of lading, all of this tenor and date, one of which being accomplished, the others to stand void.

(Signed)                               TRUSETAIL."

About the 9th of April, several days before the arrival of the corn in Atlanta, Dean, Browning & Co. exhibited to the authorities of the Western & Atlantic Railroad, at that point, an order from Withers & Loud directing the delivery of the corn to Dean, Browning & Co., at Atlanta. The

officers of the Western & Atlantic Railroad replied that they had no right to deliver upon that order, as they had contracted to deliver to the agent of the Macon & Western Railroad, but that if said agent would give an order for the delivery of the corn, they would comply with it. Thereupon, Dean, Browning & Co. exhibited to the authorities of the Macon & Western Railroad the said order from Withers & Loud, telling them that if the corn were transported to Macon, there would be no one there to receive it or pay freight, but if stopped in Atlanta, Dean, Browning & Co. would pay the freight to this latter point. The agents of the Macon & Western Road refused to consent to a delivery in Atlanta, and on a second demand, repeated the refusal.

Subsequently, upon freight lists headed " Western & Atlantic and Macon & Western Railroads : Transportation from Chattanooga to Macon," and dated April 16th, 1866, the corn went through to Macon, and was there dealt with as has already been stated. These freight lists set out the charges for transportation in three columns, one headed " Expenses," another " W. & A. R. R." and the third " M. & W. R. R."

Among the evidence adduced by the defendant in the Court below were the statements (received by consent) of the President and the Superintendent of the defendant's Road.

A part of the President's statement was as follows :

" The shipment of 800 sacks of corn by Withers & Loud, from St. Louis, on a through freight contract to Macon, bound the Macon & Western Railroad to continue the transportation to Macon, when the Western & Atlantic Railroad should deliver the same at Atlanta ; and upon a failure to so continue and deliver to Messrs. Withers & Loud, at Macon, their corn, would have made the Road responsible for damages. It is not usual for Railroads to deliver freight in transitu, and when so required, they have a right to object unless compensated and secured in the same manner as if they had made the transportation."

A part of the Superintendent's statement was as follows :
" The stoppage of freight, while in transitu over a through line of different Roads, is very seldom permitted by Railroads, and then only on ample security being given the Roads against any trouble or loss that may arise in consequence of such stoppage."

Among the evidence adduced by the plaintiffs was the deposition of one A. P. Bell, as follows :

" On or about the 19th day of April, 1866, I accompanied Messrs. Withers & Loud, of Macon, Georgia, to the Planter's Hotel, in the city of Atlanta, to see A. J. White, President of the M. & W. R. R., for the purpose of getting him to issue an order to stop the transportation of a certain lot of corn, consigned to Withers & Loud, Macon, Georgia, the authorities of the W. & A. R. R. refusing to stop said corn in transitu without such order. I saw them meet— was present. Mr. White at first refused, but when they demanded as their right to control their own property, he acknowledged the right, and ordered his agent at this place to give the order, which he did, placing the same in my hands."

The presiding Judge decided that the plaintiffs were liable for and bound to pay the freight from Atlanta to Macon, as also all the contingent expenses arising from their neglect to receive and remove the corn on its arrival there at the defendant's depot. This decision is complained of as erroneous.

Cobb & Jackson, for plaintiffs in error.

Whittle & Gustin, for defendant.

Harris, J.

This case turns altogether on the fact, whether the defendant in error was interested in the contract made in St. Louis by the plaintiffs with the Steamboat Company, for the shipment of corn to Macon.

We have given a careful examination to the testimony in

the record, and are unable to discover any contract made at St. Louis in behalf of the defendant in error, or that it was, by any arrangement known to the public or the freighters in this case, to have been jointly interested in the business of through transportation, with the Steamboat Company of St. Louis and the Western & Atlantic Railroad.

Without such contract in its behalf, or such joint interest in what is called through transportation, there can be no just claim to tax plaintiffs with freights and other expenses on its Road.   In such a case as this, the plaintiffs in error had a right to arrest the transportation of their corn at Atlanta, as they sought to do, without being subjected to the payment of freight on it to Macon.   Had, however, the Macon & Western Railroad an interest in a through contract from St. Louis to Macon, the plaintiffs could not have had any legal right to have stopped their corn at Atlanta without the payment of freights from Atlanta to Macon, though the Road may not have " incurred any expense, risk or liability, whatever," and though the consignors or consignees may have demanded the corn at Atlanta, " before any risk, expense or liability had incurred."

We give no sanction to the position, taken and argued with ingenuity, that the freighter of cars has a right to stop the transportation of goods at such points as his interest or caprice may dictate.   Such a right can only be acquired by special contract with the Railroad Company.

This decision is made in behalf of the plaintiff in error, *solely* on the ground that neither the bills of lading made at St. Louis, or the freight bills of the Western and Atlantic Railroad at Chattanooga, or other testimony in the case, shows the Macon and Western Railroad to have been interested in a through freight arrangement from St. Louis to Macon, Ga., and that plaintiffs in error knew it, and acted on that knowlege when they sent forward their corn.

Let the judgment, therefore, be reversed.